**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Charles E. McInnis,** | ) | **Civil Action No. _____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Midland Credit Management, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Charles E. McInnis, for actual, statutory, and punitive damages and attorney's fees and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.,* (hereinafter "FCRA"), and for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (hereinafter "FDCPA").  Finally, Plaintiff seeks actual damages and punitive damages for Defendant's violations of South Carolina common law as set forth herein.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent

consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681s-2(b), which is one of the cornerstone provisions of the FCRA.

5.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

6.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under 15 U.S.C. §1681, 15 U.S.C. §1692, and 28 U.S.C. §1331 and §1367.

8.     Venue is proper in the Florence Division because the Plaintiff resides in Marlboro County and the Defendant transacted business in this division.

## PARTIES

9.     Plaintiff, Charles E. McInnis, is a resident and citizen of the State of South Carolina, Marlboro County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business in San Diego, California.  Defendant regularly conducts business in South Carolina.  Defendant is a "furnisher" of credit information to the national consumer reporting agencies.  Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

11.     Defendant is a "debt collector" as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

## FACTUAL ALLEGATIONS

12.     In December 2025, Defendant sued Plaintiff on two consumer credit card accounts which originated with Credit One Bank, N.A., and were then sold to Defendant for collection.

3

13.    The credit card accounts did not belong to Plaintiff.

14.    Plaintiff never applied for nor received a credit card from Credit One Bank, NA.

15.    After being served with the lawsuit, Plaintiff went online to check his credit reports and discovered he was the victim of identity theft.

16.    On or about December 9, 2025, Plaintiff obtained a copy of his Trans Union and Equifax credit reports.

17.    On or about December 9, 2025, when Plaintiff attempted to obtain a copy of his Experian credit report, Experian denied his request.  However, in reviewing his Equifax and Trans Union credit reports, Plaintiff discovered numerous accounts had been opened in his name without his knowledge.  Additionally, there were addresses, phone numbers, and other personal information reporting that did not belong to him.

18.    On or about December 10, 2025, Plaintiff sent Trans Union a dispute letter **("First Trans Union Dispute")** stating he had received a lawsuit for collection accounts that did not belong to him.  After being served the lawsuit, Plaintiff discovered he had been the victim of identity theft.  Plaintiff specifically disputed Midland Credit Management Inc., Acct. No. 32764****; and Midland Credit Management Inc., Acct. No. 32804**** (hereinafter collectively referred to as the "Accounts") as fraudulent accounts opened in his name without his knowledge or permission.  In addition, Plaintiff disputed hard inquires by Midland Credit Management as Plaintiff did not have any accounts with Defendant and he had not authorized Defendant to access his credit file.  Trans Union received Plaintiff's dispute on December 16, 2025, and thereafter forwarded same to Defendant.

19.     On or about December 10, 2025, Plaintiff sent Experian a dispute letter **("First Experian Dispute")** stating he had just been served with a lawsuit for collection accounts that did not belong to him.  Thereafter, Plaintiff discovered he had been the victim of identity theft. Upon reviewing his credit reports, Plaintiff discovered the Accounts were reporting as collection accounts belonging to him.  Plaintiff disputed the Accounts as fraudulent and requested they be removed.  Plaintiff also disputed six (6) addresses at which he had never lived, and five (5) phone numbers he had never used.  Experian received Plaintiff's dispute on December 16, 2025, and thereafter forwarded same to Defendant.

20.     On or about December 10, 2025, Plaintiff sent Equifax a dispute letter **("First Equifax Dispute")** stating he had been served with a collection lawsuit and thereafter discovered he had been the victim of identity theft.  Plaintiff learned multiple fraudulent accounts, including the Accounts, and other incorrect information were reporting on his credit reports.  Plaintiff specifically disputed the Accounts being reported by Defendant. Plaintiff also disputed five (5) addresses at which Plaintiff has never lived.  Equifax received Plaintiff's dispute on December 16, 2025.

21.     On December 11, 2025, Plaintiff filed an Answer to the collection lawsuit denying all liability.  With his Answer, Plaintiff attached a copy of the police report he filed regarding the theft of his identity.

22.     On December 11, 2025, Defendant agreed to dismiss the collection lawsuit with prejudice.

23.     On or about December 19, 2025, Equifax sent Plaintiff a letter requesting Plaintiff provide two documents verifying his identity.

24.     On or about December 27, 2025, Trans Union sent Plaintiff Investigation Results wherein Trans Union informed Plaintiff that Defendant had verified the reporting of the Accounts as belonging to Plaintiff as accurate.  With the Investigation Results, Trans Union provided an updated credit report which confirmed that Defendant continued to report the fraudulent Accounts as derogatory Accounts belonging to Plaintiff.

25.     On or about January 7, 2026, Experian sent Plaintiff Dispute Results to his December 10, 2025, dispute, wherein Experian informed Plaintiff that Defendant had verified the Accounts as accurate.  As a result, both of the fraudulent Accounts continued to be reported as collection accounts belonging to Plaintiff on his Experian credit report.

26.     On January 12, 2026, the Court dismissed the collection lawsuit with prejudice.

27.     On or about February 4, 2026, Plaintiff sent Trans Union a second dispute letter **("Second Trans Union Dispute")** wherein Plaintiff informed Trans Union he had received its Investigation Results, but the fraudulent Accounts continued to be reported as derogatory accounts belonging to Plaintiff.  Plaintiff asked Trans Union to remove the fraudulent Accounts from his credit report.  Plaintiff informed Trans Union that Defendant had sued him and dismissed the case due to fraud. Plaintiff provided a copy of the case dismissal with his dispute.  Trans Union received Plaintiff's second dispute letter on February 9, 2026, and thereafter forwarded same to Defendant.

28.     On or about February 4, 2026, Plaintiff sent Experian a second dispute letter

("**Second Experian Dispute**") wherein Plaintiff informed Experian he had received the Dispute Results, but several incorrect items continued to be reported as belonging to him on his credit report. Plaintiff specifically disputed the Accounts as fraudulent accounts opened in his name without his knowledge or permission. Plaintiff also disputed the address of 829 Antioch Church Rd, Bennettsville, SC 29512, as an address linked to the fraudulent Accounts.

29.    On or about February 4, 2026, Plaintiff sent Equifax a letter providing Equifax with a copy of his driver's license, Social Security card, and his previous December 10, 2025, dispute letter. Equifax received Plaintiff's letter and identifying verification documents on February 17, 2026, and thereafter forwarded notice of Plaintiff's dispute to Defendant.

30.    On or about February 12, 2026, Trans Union sent Plaintiff Investigation Results and an updated credit report wherein the fraudulent Accounts were still reporting as belonging to Plaintiff.

31.    On February 19, 2026, Experian sent Plaintiff Dispute Results, stating the disputed Accounts were not currently reporting on his credit reports.

32.    On or about April 1, 2026, Plaintiff sent Trans Union a third dispute letter ("**Third Trans Union Dispute**"). In his letter, Plaintiff informed Trans Union the Accounts were still reporting as belonging to him on his credit report. Plaintiff asked for the fraudulent Accounts be removed. Plaintiff also disputed the account review inquires by Defendant. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, as well as the Stipulation of Dismissal of the collection lawsuit with prejudice. Trans Union

received Plaintiff's third dispute on April 7, 2026, and thereafter forwarded same to Defendant.

33.    On or about April 1, 2026, Plaintiff sent Equifax a second dispute letter **("Second Equifax Dispute")**.  In his letter, Plaintiff again informed Equifax he had been the victim of identity theft and that he had previously sent proof of his identity to Equifax.  Plaintiff again disputed the Accounts as fraudulent accounts, opened in his name without his knowledge or permission. Plaintiff also disputed five (5) addresses at which he never lived. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, a copy of the Stipulation of Dismissal of the lawsuit with prejudice filed by Defendant, a copy of his Social Security card, and a copy of his driver's license.  Equifax received Plaintiff's second dispute on April 10, 2026, and thereafter forwarded same to Defendant.

34.    On or about May 15, 2026, Plaintiff sent Equifax a third dispute letter **("Third Equifax Dispute")**.  In his letter, Plaintiff again informed Equifax he had been the victim of identity theft.  Plaintiff disputed the Accounts as fraudulent accounts opened in his name without his knowledge or permission, as well as five (5) addresses at which he never lived. With his letter, Plaintiff provided another copy of the police report he filed regarding the fraud, a copy of the Stipulation of Dismissal of the lawsuit with prejudice filed by Defendant, and a copy of his Social Security card and driver's license.  Equifax received Plaintiff's dispute on May 19, 2026, and thereafter forwarded same to Defendant.

35.    To date, despite notice that the Accounts were fraudulent Accounts opened in Plaintiff's name without his knowledge or permission, receipt of Plaintiff's police report,

8

and dismissal of the collection lawsuit with prejudice, Defendant has continued to report the Accounts as derogatory accounts belonging to Plaintiff to the national credit reporting agencies and to third parties.

36.    While Defendant has continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by Capital One, Synchrony Financial, Credit Fresh Marketing, Axcess Financial/CNGO, Cap One Auto, Security Finance Corporation, AF Holdco LLC, TBOM/Vervent-Total Visa, CB Indigo, Warehouse Home Furnishing Distributions, Mission Lane WebBank, Syncb/Syncb, Syncb/Car Care Discount Tire, Portfolio Recovery Associates, Shellpoint Mortgage Svc, Avante USA, Radius Global Solutions, American Coradius Intl, Medical Debt Resolution via ECMedical Debt Resolution, Cavalry Portfolio Service, CPC Credit Vision,, Constar Financial Srvcs, Synergetic Communication Inc, and Lockhart Morris Montgo.

37.    Reporting a debt to a credit reporting agency (CRA) is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *see also Smith v. Encore Capital Group, Inc.,* 966 F. Supp. 2d 817 (E.D. Wis. 2013).

38.    Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Purnell v. Arrow Fin. Servs., LLC,* 303 Fed. Appx. 297, 304, n.5 (6th Cir. 2008); *see also Malone v. Cavalry Portfolio Servs., LLC,* 2015 U.S. Dist. LEXIS

158310, 2015 WL 7571881 (W.D. Ky. Nov. 24, 2015); *Quale v. Unifund CCR Partners,* 682 F.Supp.2d 1274 (S.D. Ala. 2010); *Sullivan v. Equifax, Inc.,* 2002 U.S. Dist. LEXIS 7884, 2002 WL 799856 (E.D. PA. Apr. 19, 2002).

39.     The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.,* No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); see also *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

40.     An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

41.     Defendant has subjected Plaintiff to false, deceptive, unfair, and unconscionable means to collect a debt.

## <u>COUNT ONE</u>
### Violation of the Fair Credit Reporting Act

42.     Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 41 hereinbefore as if fully set forth herein.

43.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

44. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

45. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the alleged investigation, if any, to the consumer reporting agencies.

46. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendant's Account was inaccurate, incomplete, false, and misleading.

47. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to delete the information or permanently block the reporting of the disputed information when the information disputed by Plaintiff could not be verified after Defendant's alleged reinvestigation.

48. As a result of the Defendant's violations set forth above, the Plaintiff suffered harm to his reputation and credit reputation, had a substantial drop in his credit scores, delayed applying for credit, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright, physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses.

## COUNT TWO
### Violation of the Fair Credit Reporting Act

49. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 48 hereinbefore as if fully set forth herein.

50.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

51.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

52.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

53.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

54.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to delete the information or permanently block the reporting of the disputed information when the information disputed by Plaintiff could not be verified after Defendant's alleged reinvestigation.

55.     As a result of the Defendant's violations set forth above, the Plaintiff suffered harm to his reputation and credit reputation, had a substantial drop in his credit scores, delayed applying for credit, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright, physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses.

## **COUNT THREE**
### **Violation of the Fair Debt Collection Practices Act**

56.     Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 55 hereinbefore as if fully set forth herein.

57.     Defendant is engaged in the business of collecting consumer debts from consumers and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

58.     Defendant violated 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount, and/or legal status of an alleged debt.

59.     Defendant violated 15 U.S.C. §1692e(8) by communicating information to the credit reporting agencies which it knew, or should have known, to be false.

60.     Defendant violated 15 U.S.C. §1692e(10) by using false representations and/or deceptive means to collect an alleged debt, even after dismissing the collection lawsuit with prejudice.

61.     Defendant violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

62.     Due to Defendant's violations of the FDCPA, Plaintiff has suffered damages, including loss of his personal time, harm to his credit and credit score, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation.  Plaintiff is entitled to statutory damages, and actual damages in an amount to be determined by the jury.

63.     Plaintiff also requests attorneys' fees and costs due to Defendant's violations of the FDCPA pursuant to 15 U.S.C. §1692k.

## COUNT FOUR
### Defamation, Libel, Slander

64.    Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 63 hereinbefore as if fully set forth herein.

65.    Defendant willfully, wantonly, recklessly, and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and credit reputation, caused Plaintiff physical sickness, loss of sleep, fear, worry, mental anguish and emotional distress.

66.    Said communications and statements were false in that Plaintiff was not indebted to Defendant and Plaintiff did now owe any balance on the Accounts that are the subject of this action.

67.    Following Defendant's dismissal of the collection lawsuit with prejudice, Defendant continued to report the Accounts as belonging to Plaintiff and verifying the accuracy of the information it reported to the credit reporting agencies and to third parties.

68.    At the time Defendant made said communications and statements, Defendant knew or should have known the falsity of the communications and statements, or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.  The Accounts were not Plaintiff's and said fact was known to Defendant as Plaintiff had informed Defendant directly that the Accounts were fraudulently opened in his name without his knowledge or permission and provided Defendant a copy of his police report regarding the theft of his identity.

14

69.     The defamatory statements were willfully, recklessly, and maliciously published by Defendant to Plaintiff's creditors and potential creditors, and other third parties. The Accounts were reported by Defendant to the national credit reporting agencies for dissemination therefrom throughout the country.  Indeed, the Accounts were viewed by multiple entities after said entities reviewed Plaintiff's credit reports.

70.     The defamatory statements referenced Plaintiff. Defendant reported said defamatory statements to Plaintiff's credit reports. Said false and defamatory statements have harmed the reputation and credit reputation of Plaintiff and/or deterred third persons from associating with him.  Specifically, Defendant reported two derogatory Accounts as belonging to Plaintiff, having a past due balance, and being charged off and/or collection Accounts.

71.     As a proximate consequence of Defendant's willful and malicious conduct, false, embarrassing, misleading and negative information concerning Plaintiff was published and disseminated to third parties, including the national credit reporting agencies, current creditors, and potential credit grantors multiple times.

72.     As a result of Defendant's willful and malicious conduct, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to suffer injury to his reputation, and suffer economic loss due to the actions of Defendants.  Additionally, Plaintiff was caused to suffer embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, mental anguish and emotional stress for which he claims compensatory damages.

15

73.    Due to the intentional or reckless disregard of Plaintiff's rights as set forth herein, Plaintiff is entitled to and seeks punitive damages against Defendant for its libelous conduct.

## COUNT FIVE
### Negligent Training and Supervision

74.    Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 73 hereinbefore as if fully set forth herein.

75.    Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon Plaintiff.

76.    Defendant knew or should have known that said conduct was improper and in violation of multiple Federal and State laws, including the FDCPA and FCRA.

77.    Defendant negligently failed to train and supervise its agents and employees in order to prevent said improper and unconscionable conduct.

78.    Defendant negligently failed to train and supervise their agents and employees on the Federal and State laws asserted herein.

79.    As a result of Defendant's negligence, Plaintiff suffered damages, including embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, mental anguish and emotional stress for which he claims compensatory damages.

## COUNT SIX
### Reckless and Wanton Training and Supervision

80.    Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 79 hereinbefore

as if fully set forth herein.

81.     Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon Plaintiff.

82.     Defendant knew or should have known that said conduct was improper and in violation of multiple Federal and State laws, including the FDCPA  and FCRA.

83.     Defendant recklessly and wantonly failed to train and supervise their agents and employees in order to prevent said improper and unconscionable conduct.

84.     Defendant recklessly and wantonly failed to train and supervise their agents and employees on the Federal and State laws asserted herein.

85.     As a result of Defendant's reckless and wanton conduct, Plaintiff suffered damages, including embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, mental anguish and emotional stress for which he claims compensatory damages.

86.     Due to Defendant's willfulness, Plaintiff also seeks punitive damages in an amount to be determined by the jury.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.      Costs and reasonable attorneys; fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.      For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include Plaintiff's actual damages, statutory damages of one thousand dollars ($1,000.00) from Defendant for its violations of the FDCPA, as well as attorneys' fees and costs.

E.      For actual, compensatory and punitive damages for Defendant's violation of South Carolina common law as set forth herein;

F.      For this matter to be heard by a jury; and

G.      For such other and further relief as this Court deems necessary and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff


**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Midland Credit Management, Inc.

18

c/o Corporation Service Company – Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492